FARR v. GILREATH.

1. A testator by his will declared: "I give unto my son R., in trust for my daughter M., the lots that I live on in the town of G. If my daughter M. should die leaving no child, it is my wish that her trustee should sell the property in his hands and divide the proceeds of the same equally between my surviving children, or the heirs of their bodies. But in case she should have a child or children, and they live to come of age, then the property belongs to the child or children at the death of their mother." *Held*, from the intent of the testator and the duties imposed upon the trustee, that the fee in these lots of land was devised directly to the trustee, and that the trust was not executed.

2. The interest here given to testator's "surviving children" was a contingent remainder.

3. Upon the happening of the contingency, the surviving children were not entitled to the land itself, but to "the proceeds of the same." The land then became personalty, and these remaindermen, having no title thereto, could not recover it from one to whom the trustee had con-

veyed; but if such conveyance was void, they might follow the land, as impressed with a trust, into the hands of the purchaser, and demand a sale, so that they might receive the proceeds.

4. It is the policy of the law to sustain judicial sales when it can be done without violating principle or doing injustice.

5. Contingent remaindermen *in esse* and within reach are necessary parties to a proceeding to sell the land in which they have such an interest, and if not parties, they are not bound by the judgment. *Moseley v. Hankinson* (22 *S. C.*, 323) approved, and some points of difference between that case and this stated.

6. The daughter M., a paralytic and childless widow, filed her bill against R., the trustee, to require the sale of this property, the income from which was alleged to be inadequate to her support, and to reinvest the proceeds. The court so ordered, and the trustee sold. *Held*, that the postponement by testator of the sale until M.'s death being wholly for her benefit, the power of sale given by the will to the trustee might be accelerated by the tenant for life, and she having, by her proceedings in court, substantially joined with the trustee in his sale and deed, the purchaser took a good title under this power.

7. One of the remaindermen having instituted an action against the trustee to recover a portion of the proceeds of the property so sold, and having received a portion, she thereby elected to confirm the sale.

Before FRASER, J., Greenville, July, 1884.

The case is thus stated by the master:

The master, to whom it was referred to take the testimony in the above entitled action and return the same to the court, together with his conclusions of fact therefrom, and also his conclusions of law, with leave to report any special matter, begs leave to report that he has held references and taken the testimony herewith filed; and from the same he respectfully submits the following report. As conclusions of fact, he finds—

1. That Dr. Burwell Chick departed this life in 1847, leaving his last will and testament in full force and effect, in the fourth clause of which he gave to his son, Reuben S. Chick, in trust for his daughter, Maria H. Thompson, among other things, the property in dispute; [1] and in the twelfth clause of his will he

---

[1] This fourth clause was as follows: "I give unto my son, Reuben S. Chick, in trust for my daughter, Maria H. Thompson, the following property, to wit, Harry, Lewis, John, Judy, and her children, Martha and Willis, Tilda and her child Sofa, negro slaves; also the lots that I live on

says: "If my daughter, Maria H. Thompson, should die leaving no child, it is my wish that her trustee should sell the property in his hands and divide the proceeds of the same equally between my surviving children or the heirs of their bodies. But in case she should have a child or children, and they live to come of age, then the property belongs to the child or children at the death of their mother."

2. The said Reuben S. Chick accepted said trust and the real estate mentioned in the fourth clause of said will remained in his possession undisturbed until November 3, 1871, when the said Maria H. Thompson instituted a proceeding in this court against her said trustee, and him only, demanding, for certain reasons therein mentioned, that said real estate, or a portion thereof, be sold. The matter was referred to a special referee, and on the coming in of his report, the court ordered, adjudged, and decreed, that said real estate be sold by said trustee on the terms specified in said decree; and further ordered, that before the first instalment fell due, or before it was collected, that the trustee give a bond in the sum of four thousand dollars to the clerk of this court for the faithful performance of his duties in the discharge of his trust.

3. In pursuance of said decree, the trustee, on March 4, 1872, sold said real estate at public outcry, and on March 22, 1873, filed his bond, duly approved, with the clerk, as required by said decree.

4. At the sale of said real estate, a portion thereof was purchased by one A. L. Herron, who was subsequently adjudged a bankrupt, and the real estate purchased by him was sold by his assignee on January 8, 1877, in three separate parcels, and the lot in controversy was purchased by the defendants, who paid the said assignee for the same.

5. Reuben S. Chick departed this life in 1877, and subsequently thereto Pettus W. Chick was appointed trustee of the said Maria H. Thompson, and assumed charge of the trust estate. The said Pettus W. Chick died, and some time thereafter the said Maria H. Thompson instituted a proceeding in the Court

in the town of Greenville; also the tract of land I bought of D. Goodlett, laying on Richland Creek."—REPORTER.

of Common Pleas for Newberry County against Sarah E. Chick, as executrix of Reuben S. Chick, and Betsy Chick, as executrix of Pettus W. Chick, demanding an accounting of them for the trust estate which went into the possession of their respective testators. On hearing the pleading in the said cause, the court, on June 5, 1879, ordered the said Sarah E. Chick to turn over to the master of Newberry County, as receiver, all choses in action and evidences of indebtedness belonging to said trust estate. The complaint in this cause was amended on August 4, 1879, making Wilhelmina B. Chaplin, Louisa V. Farr, and Caroline Hodges, who were the remaindermen, parties defendant. On February 14, 1880, under this proceeding, W. A. McDaniel was appointed trustee of said trust estate, who filed his bond and assumed the duties of trustee in July, 1880. Maria H. Thompson died on August 2, 1882, and Louisa V. Farr was appointed administratrix of her estate, and as such she was, on November 28, 1882, substituted as plaintiff in the case, which is still pending.

6. On October 5, 1880, Louisa V. Farr filed her complaint against Thomas S. Moorman, as executor of Elizabeth D. Chick, deceased (who was executrix of Reuben S. Chick), Wilhelmina B. Chaplin, and others, in which reference is made to the trust estate of Maria H. Thompson, by saying that the estate of Reuben S. Chick is responsible therefor.

7. Under this proceeding, a receiver was appointed for the estate of Reuben S. Chick, who filed a creditor's bill, and an order was passed requiring the creditors of Reuben S. Chick to establish their claims before him as master for this court. In pursuance of this order, W. A. McDaniel, as trustee, presented the claim of the trust estate, but the same has never been fully established, owing to an accounting yet to be had in the case first above mentioned. The suits are still pending.

Out of the proceeds of the sale of the real estate of the said A. L. Herron, bankrupt, his assignee, by order of court, paid over to the executrix of Reuben S. Chick one thousand dollars, and to Messrs. Earle & Blythe, attorneys for Maria H. Thompson, six hundred dollars. He also advanced to the said Maria H. Thompson three hundred and fifty dollars to pay for a lot of

land, and took a mortgage thereon to secure the same. He also let her have eighteen 20-100 dollars to pay for sash and blinds for a house built on said lot, and advanced to her in cash fifteen dollars. The balance remaining in his hands as assignee, to wit, seven hundred and thirty-eight 91-100 dollars, he paid over to W. A. McDaniel as trustee, out of which the said trustee paid to Louisa V. Farr, one of the plaintiffs herein, the sum of two hundred and thirty-seven 50-100 dollars, on account of her share in said trust estate, and for which he took two separate receipts. He also paid on account of the burial expense of the said Maria H. Thompson ninety-three 80-100 dollars, which was done at the instance of Louisa V. Farr, and who agreed that if the other parties in interest did not assent to it, she would be responsible for the same. The balance of the money is still in the hands of the said W. A. McDaniel as trustee.

8. When the property was sold by Reuben S. Chick as trustee, that portion of it purchased by the said A. L. Herron was in a dilapidated condition, and one hundred and fifty dollars a year would have been a fair rental for it. After Herron bought, he spent at least one thousand dollars on that portion now owned by the defendant in the way of improvements and thereby improved it considerably, and since it was purchased by the defendant two hundred and fifty dollars a year would be a fair rental for it.

9. The defendant paid a fair price for the property, and thought the title to it was good. He has also improved the property considerably.

10. Reuben S. Chick, Pettus W. Chick, and Maria H. Thompson all died leaving no issue of their bodies, and Louisa V. Farr, Wilhelmina B. Chaplin, and Caroline Hodges were the only children of Dr. Burwell Chick who survived Maria H. Thompson. Caroline Hodges has since died leaving no issue of her body, but left her last will and testament, executed in the presence of two subscribing witnesses, which was admitted to probate in the State of Arkansas, where she resided at the time of her death. In her said will the said Caroline Hodges bequeathed her entire estate, both real and personal, to her husband, Asa Hodges, one of the plaintiffs herein.

As matters of law the master finds:

1. That under the 4th and 12th clauses of the will of Dr. Burwell Chick, deceased, the trustee, Reuben S. Chick, was clothed with the legal fee in the lot of land in dispute. It was not simply a power of sale, but a devise of the fee for the purpose of the sale. *Executors of Ware* v. *Murph, Rice,* 55; 2 *Jarm. Wills,* *295, and notes.

2. That under the 12th clause of said will the remaindermen took no interest whatever in said land as land, but only in the proceeds. It was a case of equitable conversion. *Perry* v. *Logan,* 5 *Rich. Eq.,* 202.

3. That the plaintiff, Louisa V. Farr, having received a part of her share in the proceeds of the land, has made her election, and there can be no reconversion, for where the direction is to convert land into money, one co-owner cannot elect to take his share in land; all must elect or none. *Fletcher* v. *Ashburner,* 1 *Lead. Cas. Eq.,* 659.

4. That the surviving children of Dr. Burwell Chick took, under the 12th clause of his will, a remainder dependent upon a double contingency, first, upon the failure of the life-tenant to have a child living to attain the age of twenty-one years; and, second, upon their surviving the life-tenant; and this remainder never became vested until after the sale of the land, and attached to the proceeds.

5. That in the case of Maria H. Thompson against Reuben S. Chick, trustee, the court certainly had jurisdiction; that it also had before it all parties necessary for the purposes of the suit. The trustee represented the legal title, and the court acted upon that, and the sale under its decree passed a good fee simple title to the purchaser, which has been duly transmitted for valuable consideration to the defendant herein. *Van Lew* v. *Parr,* 2 *Rich. Eq.,* 321; *Bofil* v. *Fisher,* 3 *Rich. Eq.,* 1; *Williman* v. *Holmes,* 4 *Rich. Eq.,* 475. The case seems to have been carefully considered and the discretion of the court wisely exercised.

6. The equities of the defendant are at least as high as those of the plaintiffs. The purchaser at the sale paid a full price, and, relying upon his title, greatly improved the property. The defendant succeeded to all of his equities, and has himself made improvements. The plaintiffs have the fund and the bond of the

trustee to look to; the defendant has nothing, and where equities are equal, the law will prevail. Therefore the legal title of the defendant must stand. The master therefore concludes as matter of law, that the plaintiffs can take nothing by their suit.

The Circuit decree was as follows:

It is not necessary to consider whether the plaintiffs or any of them have received any portion of the fund arising from the sale of the land, of which they now complain, or are now pursuing in another action against the trustee and his sureties, or their representatives, the fund arising from said sale.

The leading question in the case is as to the validity of a sale of this land by the trustee under an order of this court, made under proceedings commenced November 3, 1871, and in which only the trustee and the tenant for life were made parties. The quantity and quality of the interests in the land will be determined by a proper construction of the 4th and 12th clauses of the will of Burwell Chick, which are set out in the report. I have examined very carefully the authorities which have been cited in argument of the cases. The time at my disposal will not permit me to enter into any elaborate review of them, and I do not know that it will be profitable to do so. I will therefore state my conclusions as briefly as I can.

"The power of the court to sell trust estates is not doubted." *Gibbes* v. *Holmes*, 10 *Rich. Eq.*, 491. The interest of these plaintiffs under these clauses of the will was not vested, but contingent. The distinction as laid down by Mr. Justice McIver in *Faber* v. *Police*, 10 *S. C.*, 387, is "that in the one case the right to the estate is fixed and certain, though the right to the possession is deferred to some future period; while in the other the right to the estate as well as the right to the possession of such estate is not only deferred to a future period, but is dependent upon the happening of a future contingency." If the life-tenant died leaving no child, then these plaintiffs would take, otherwise not; and their interest under this will was certainly a contingent one when this sale was made during the life of Mrs. Thompson.

Under a will, the word heir is not necessary to carry the fee, and the devise to the trustee was sufficient of itself to give him

the fee in this land; and if it were not, the power to sell was sufficient, and would have been sufficient even under a deed, on the ground that equity always enlarges the estate of the trustee so as to make it sufficient to support the trusts. There is nothing in the will which gives these plaintiffs any legal estate in the land. They had an interest only in the proceeds of sale, and the trustee held the fee. When the Court of Equity exercises its jurisdiction, to direct a sale of land held in trust, all that is necessary to make a valid title under its order is to have the fee represented, and even the first remainderman in fee is sufficient.

In *Williman* v. *Holmes, supra,* 493, Chancellor Dargan, in summing up the authorities, thus announces the principle: "That where the person entitled to the first estate of inheritance is a party before the court, he is to be regarded as the representative of all those contingent interests which are dependent and are to succeed his estate; and, consequently, a decree against such a party will affect and bind those who succeed him." In the case in which that order was made, which is here claimed to be invalid, the whole fee was represented by the trustee. This would have been sufficient before the code, which has, as it were, reaffirmed the rule in section 134, which gives a trustee of an express trust the right to sue, "without joining the persons for whose benefit the action is brought," and the same rule must necessarily apply to defendants. The case of *Hodges* v. *Chick* (10 *Rich. Eq.*, 178) does not touch the question raised here. In that case there was some question as to the distribution of the proceeds of sale made by the trustee under the power of sale given by the will, and in the settlement of that all the parties interested in the fund had a right to be heard.

I therefore hold that the sale of the land claimed in this action under the order of the court, above referred to, was valid, and passed the whole fee to the purchaser, who took the land freed and discharged of all claims in favor of these plaintiffs.

It is therefore ordered and adjudged, that the exceptions be overruled, and report of the master confirmed, and that the complaint be dismissed with costs to be paid by the plaintiffs.

The plaintiffs appealed on the following exceptions:

1. Because, it is respectfully submitted, that his honor erred in holding that the sale of the land claimed in this action under the order of the court, made under proceedings commenced November 3, 1871, by Maria H. Thompson against Reuben S. Chick, her trustee, was valid, and passed the whole fee to the purchaser, who took the land freed and discharged of all claims in favor of the plaintiffs.

2. Because his honor erred in holding that under the will of Burwell Chick there is nothing which gives the plaintiffs any legal estate in the land in question, and that they had an interest only in the proceeds of sale, and that the trustee held the fee.

3. Because that his honor erred in holding that the plaintiffs in this action, who were interested, were not necessary parties to the said suit of Maria H. Thompson against Reuben S. Chick, and that the tenant for life and the trustee, Reuben S. Chick, were the only necessary and proper parties to said suit.

*Messrs. Stokes & Irvine, G. M. Chaplin,* and *Clark & Williams,* for appellants.

*Messrs. T. Q. and A. H. Donaldson, Perry & Heyward,* and *Wells & Orr,* contra.

October 23, 1885.    The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.    This action was brought to recover possession of a half acre lot in the city of Greenville. The testimony is not in the Brief, but the report of master Douthit is so full and clear that it will only be necessary to give such an outline as will make the opinion intelligible.

\*          \*          \*          \*          \*          \*          \*

Considering, as we should, the fourth and twelfth clauses of the will together, and making a small transposition by placing the last paragraph of clause twelve in its natural and proper position as part of the disposing clause, the whole provision would read as follows: "I give unto my son, Reuben S. Chick, in trust for my daughter, Maria H. Thompson, and at her death to such child or children as may live to come of age, the following property, &c.   But if my said daughter should die leaving

no child, it is my wish that her trustee should sell the property in his hands and divide the proceeds of the same equally between my surviving children or the heirs of their bodies," &c.   It is manifest that Mrs. Thompson and her children were naturally the first objects of the testator's bounty, and the provision that, in case of her death without a child, the property should be sold and the proceeds equally divided among his other surviving children, was merely secondary.   Keeping this in view, it seems to us that several points contested are so clear as to make it unnecessary to enter into the intricate and involved doctrines of contingent and springing uses mooted in the learned argument at the bar.

There can be no reasonable doubt that the testator intended to dispose of his whole interest in the property, leaving no part of it intestate.   We think that such intention was effectually carried out, and that the fee in the land was devised directly to the trustee.   It is true that the word "heirs" is not used, but our statute (*Gen. Stat.*, § 1861) makes the use of words of limitation in a will unnecessary.   Every devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied.

But apart from the statute, the rule is that lands devised to a trustee, upon certain trusts, gives such estate as is commensurate with the purposes of the trust.   The duties imposed upon this trustee made the fee necessary to support them.  He was required to hold the title for Mrs. Thompson during her life, and if she died without children, "to sell the property in his hands and divide the proceeds equally," &c.   The trust was by no means a naked power to sell, but a devise of the property to the trustee for certain purposes, and in one event (which has happened) to sell and distribute the proceeds, &c.   "The distinction is between a devise to executors to sell, as if the testator says: 'I devise my land to my executor to be sold;' and a devise that the executor shall sell, as when the testator says: 'I desire or direct that my lands be sold by my executors.'   In the first case the fee passes to the executors; in the last the fee passes to the heir, to be divested whenever the power is executed by the executors." *Executors of Ware* v. *Murph, Rice,* 55; 3 *Jarm. Wills* (5 *Am. edit.*), 52, 53, and notes.

Nor do we think that the trusts were executed by the statute of uses. A passive trust, or one where the trustee has no active duty imposed upon him, is executed by the statute of uses; but the statute does not execute the trust in case there is some duty to be performed or act to be done by the trustee, made necessary by the scheme of the will, and for the performance of which it is necessary that the legal estate should not pass from the trustee by operation of the statute. *Williman* v. *Holmes*, 4 *Rich. Eq.*, 475; *Ioor* v. *Hodges*, *Speer Eq.*, 593; 3 *Jarman*, 52, and notes. Or, as stated by Chancellor Harper in *Posey* v. *Cook* (1 *Hill*, 413): "Perhaps the rule might be more accurately expressed to say that where the intention is that the estate shall not be executed in the *cestui qui use*, and any object is to be effected by its remaining in the trustee, then it shall not be executed," &c. Besides, as to the interest of these plaintiffs, the property was to be considered mere personalty, as we shall see hereafter.

We cannot doubt that the interest of the plaintiffs, under the will of their father, Dr. Chick, was contingent. As to the character of the interests, it seems to us that the case of *Faber* v. *Police* (10 *S. C.*, 376), cited in the decree below, is absolutely conclusive. It was there held that "a devise to trustees for the use of A. during his life, and after his death in trust for his lawful issue living at the time of his death, and if he should die leaving no issue (there being none), then over to his residuary devisees and legatees, gives to the remaindermen not a vested, but a contingent remainder." Considered at the time of the testator's death, when the will took effect, the interests of the plaintiffs were dependent upon a double contingency: First, that Mrs. Thompson should die without children; and, second, that the remaindermen should survive her. It cannot be necessary upon this point to do more than quote a portion of Mr. Justice McIver's remarks in the case of *Faber* v. *Police*: "According to the elementary writers a vested remainder is one which is limited to an ascertained person in being, whose right to the estate is fixed and certain, and does not depend upon the happening of any future event, but whose enjoyment in possession is postponed to some future time. A contingent remainder, on the other hand, is one which is limited to a person not in being, or not

ascertained; or if limited to an ascertained person, it is so limited that his *right* to the estate depends upon some contingency in the future. So that the most marked distinction between the two kinds of remainders is, that in the one case the right to the estate is fixed and certain, though the right to the possession is deferred to some future period; while in the other the right to the estate, as well as the right to the possession of such estate is not only deferred to a future period, but is dependent upon the happening of some future contingency," &c.

It will be observed that in no event is the land itself devised to the plaintiffs, but "the proceeds" of sale directed to be made by the trustee. In such case it is well settled that, by the equitable doctrine of constructive conversion, the property is considered as personalty, and not as realty. "Money directed to be employed in the purchase of land, and land directed to be sold and turned into money, are to be considered as that species of property into which they are directed to be converted, and this in whatever manner the direction is given. * * * It follows, therefore, that any person claiming property under a will or settlement directing its conversion must take it in the character which such instrument has impressed on it, and its subsequent devolution and disposition will be governed by the rules applicable to property of this kind," &c. 2 *Jarm. Wills* (5 *Am. edit.*) 170, and notes, where all the authorities are collected; and among them *Perry* v. *Logan,* 5 *Rich. Eq.,* 202.

We do not consider this as one of the cases in which the beneficiaries may elect to take the property *in specie* which was ordered to be sold. Not to advert to the fact that there has already been "a *de facto*" conversion the general rule is, that where the conversion is imperatively directed, it is regarded as taking place at the time of the testator's death, although the time fixed by him for the sale for that purpose be distant. The words of the will: "It is my wish that her trustee shall sell the property in his hands and distribute the proceeds equally," &c., amount to a positive direction that in the event contemplated, the property should not go over *in specie,* but be converted at all events "out and out." *Mathis* v. *Guffin,* 8 *Rich. Eq.,* 39; *Wilkins* v. *Taylor, Ib.,* 291; *North* v. *Valk, Dudley's Eq.,* 212. The lands, as such, were

33

not devised to the plaintiffs, but the proceeds thereof as personalty, and therefore they are not devisees, but legatees. Having no title to the land itself, they cannot at law recover it from Gilreath, the defendant, who is in possession with the legal title from the trustee. So far as the recovery of the land is concerned, this would seem to be conclusive against the plaintiffs.

But it is urged that even if the claim of the plaintiffs is a mere equity for an account of the proceeds of sale, yet as *cestuis que trust* they may come into court to have the land now sold in order to get at "the proceeds;" that the sale made prematurely during the life of Mrs. Thompson being void, and the order of the court not binding on them, as they were not parties to the proceeding, they may follow the land into the possession of a purchaser at that void sale, who, though having the legal title from the trustee, purchased with constructive notice of the will containing the trust, which still attaches to the land. This makes the question whether the sale made under the orders of the court in the case of *Thompson* v. *Chick, Trustee*, is binding upon the plaintiffs, who were not made parties. The sale was after due notice, open, fair, and for full value. There is no reason to doubt that the parties acted in good faith without suspecting any defect. It was what is known as a judicial sale, in which the court is, in some sense, the vendor. From the confidence which the public reposes in the judgments of the courts, which should not be lightly weakened, it is wise policy to sustain such sales when it can be done without violating principle or doing injustice. It is true, there are some cases in which the judgment of the court operates on the property itself, *in rem*, without any nice regard to the parties personally before the court, but such cases are exceptional. The general rule certainly is, that those who are not parties are not bound by the judgment.

This court has lately held in the case of *Moseley* v. *Hankinson, Trustee* (22 *S. C.*, 323), that contingent remaindermen *in esse* and within reach, are necessary parties to a proceeding to sell land. It is true, in that case the interest of the remaindermen was in the land itself, which was the subject of the proceeding, while in this they only have an interest in the proceeds, after sale by the trustee. But, in respect to the necessity of the

remaindermen being parties, we cannot see such a distinction between the cases as would warrant us in holding differently in this case. As we understand it, the rule proceeds on the general principle that all persons *in esse* should be made parties who have a substantial interest in the subject matter, without reference to what may be the precise character of that interest.

The case at bar, however, does differ from that of *Moseley v. Hankinson* in one important particular. In that case Fortune, the trustee, had *no power to sell;* and of course the sale rested solely on the order of the court, which was held not to bar the remaindermen who were not made parties. But in this case the will gave the trustee express power to sell, which he could exercise without any authority whatever from the court. The trustee did make the sale, which was in all respects according to the express terms of the trust, except that it was made during the life of Mrs. Thompson, instead of at her death. Leaving out of view entirely the order of the court, this *scintilla* of irregularity is the sole ground relied upon to avoid the sale and recover the land, with all the improvements which have been placed upon it.

No doubt the general principle is, that such powers must be strictly executed, but there is one rule of interpretation which, as it seems to us, covers the case, and was not referred to by the Circuit Judge, probably for the reason that, in his view, it was unnecessary. Mr. Perry lays it down as follows: "A power of sale, like all other powers, can be executed only in the mode and manner prescribed in the instrument of trust, as where the trust is to sell after the death of the tenant for life, * * * a sale before the time is bad, although made by the decree of the court or act of the legislature. But the execution of the power of sale may be accelerated by the tenant for life surrendering the life estate, or by joining with the trustee in effecting the conveyance; for the postponement of the sale being for the benefit of the tenant for life, such tenant may, by executing the deed of conveyance, waive such benefit. If, however, the postponement of the sale is not for the benefit of the tenant for life, but for the benefit of the remaindermen, as by preserving real security for them, or with the expectation of securing a rise in value for them, the sale of the estate cannot be accelerated, even with the concur-

rence of the tenant for life." See 2 *Perry Trusts* (3d edit.), § 783, and authorities in notes.

In regard to the intention of the testator on the point indicated, we have no doubt whatever. As we construe the will, Mrs. Thompson was the first object of the testator's bounty, and the postponement of the sale of the land until her death was entirely for her benefit, and without reference to enhancing the value of the limitation over to the remaindermen, who were only secondary, and might never take. It is manifest that the testator intended Mrs. Thompson to enjoy the property *in specie* during her life, but in case she should die without child or children, that it should never pass over in that form to the remaindermen. The sale was made in the life-time of Mrs. Thompson, at her earnest request and for her benefit, in fact, to enable her to live on the interest of the purchase money, which, being a feeble lady, she could not do on the land itself, as she could not make it remunerative.

It is true that Mrs. Thompson did not actually sign the deed to the purchaser, but in instituting the proceedings for its sale, she did what, in our judgment, was equivalent to it. She consented to the sale and urged it, and in so doing substantially joined with the trustee in executing the deed of conveyance, which, under the rule above stated, amounted to a waiver of her exclusive right to enjoy the land *in specie*, and accelerated the execution of the power of sale. The life tenant waived the peculiar privilege given to her by the testator, and concurred in making title to the purchaser; the effect of which was to allow the sale at an earlier day, and the plaintiffs, more remotely connected with the property, have no just cause to complain, but must be remitted to the proceeds of sale.

Indeed, so far as Mrs. Farr is concerned, we agree with the master that she elected to confirm the sale made when she instituted proceedings to recover the purchase money, and actually received a part of it. "So an acceptance of part of the purchase money by the *cestui que trust* may be a confirmation of a sale made in breach of the trust," &c. 2 *Perry Trusts*, § 852, and notes.

The judgment of this court is that the judgment of the Circuit Court be affirmed.